UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| TIMOTHY J. HUNTIMER, | 4:23-CV-04005-ECS |
| Plaintiff, | |
| vs. | |
| DARIN YOUNG, a/k/a Warden Young, Warden, in his individual capacity; LT. CHARLES HERRMANN, p #1086126, in his individual capacity; STEPHANIE CAREY-SCHAEFFER, Corrections Officer, in her individual capacity; RHEANNAN BILLS, C.O., in her individual capacity; LT. JAKE ROHWER, C.O., in his individual capacity; SGT. AMBER STEVENS, C.O., in her individual capacity; BLAISLEY ELLIOT, C.O., in her individual capacity; JUSTIN BARRET, C.O., in his individual capacity; JAKE HALEY, C.O., in his individual capacity; JUAN GREEN, C.O., in his individual capacity; MORGAN DEPPY, C.O., in his individual capacity; RACHEL SCHMITZ, a/k/a Nurse Rachel, in her individual capacity; CIERRA HARKEMA, a/k/a Nurse Sierra, in her individual capacity; and LANCE SEYDEL, in his individual and official capacity; | OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| Defendants. | |

Plaintiff Timothy J. Huntimer commenced this pro se civil rights lawsuit under 42 U.S.C.

§ 1983 for events that transpired while he was incarcerated at the South Dakota State

Penitentiary ("SDSP"). Doc. 1. The Court granted Huntimer leave to amend his Complaint,

Doc. 10, and screened Huntimer's Amended Complaint under 28 U.S.C. § 1915A, dismissing it

in part and directing service upon Defendants in part, Doc 16. Defendants later moved to

1

dismiss Huntimer's Amended Complaint. Doc. 40. This Court granted in part and denied in part

Defendants' Motion to Dismiss. Doc. 75. The remaining claims are:

- Eighth Amendment excessive force claims against Charles Herrmann and Jake
  Rohwer in their individual capacities for money damages;
- Eighth Amendment excessive force claim against Lance Seydel in his official
  capacity for injunctive relief;
- Eighth Amendment failure to protect claims against Stephanie Carey-Schaeffer,
  Rheannan Bills, Blaisley Elliot, Juan Green, Amber Stevens, Morgan Deppy,
  Justin Barret, Jake Haley, Rachel Schmitz a/k/a Nurse Rachel, and Cierra
  Harkema a/k/a Nurse Sierra in their individual capacities for money damages;
- Eighth Amendment deliberate indifference to serious medical needs claims
  against Schmitz and Harkema in their individual capacities for money damages;
- Eighth Amendment failure to train claims against Darin Young and Seydel in
  their individual capacities for money damages;
- Eighth Amendment failure to train claim against Seydel in his official capacity for
  injunctive relief; and
- State-law assault and battery claims against Herrmann and Rohwer.

Defendants now move for summary judgment on these remaining claims. Doc. 46.[1] In

support of their motion, Defendants submitted a Statement of Undisputed Material Facts along

with affidavits from Addyson Aquirre, Jake Rohwer, and Lance Seydel. Docs. 48–51. Huntimer

opposes Defendants' motion and provides a statement of disputed material facts and an affidavit

of his own. Docs. 69–71. Defendants filed a reply brief. Doc. 72. Huntimer filed a sur-reply

brief. Doc. 73.

---

[1] Defendants moved for summary judgment before this Court issued its Opinion and Order on
Defendants' Motion to Dismiss. Accordingly, arguments on claims this Court dismissed in its
prior order are moot.

Because this Court determines Defendants are entitled to summary judgment on all § 1983 claims, it grants Defendants' motion on the § 1983 claims and dismisses them with prejudice. Doc. 46. Without any viable federal claims, this Court declines to exercise supplemental jurisdiction over the state-law assault and battery claims and dismisses them without prejudice. For this reason, Defendants' summary judgment motion is moot to the extent it sought dismissal of the state-law claims.

## I.    Factual Background[2]

Huntimer has intermittently been in the custody of the South Dakota Department of Corrections ("DOC").[3]  Doc. 51 ¶ 1. During the relevant time period of Huntimer's claims, he

---

[2] The Facts are largely taken from Defendants' Statement of Undisputed Material Facts. Under Local Rule, the party opposing a motion for summary judgment "must respond to each numbered paragraph in the moving party's statement of material facts with a separately numbered response and appropriate citations to the record." D.S.D. Civ. LR 56.1.B; see also Fed. R. Civ. P. 56(c) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."). Huntimer does not dispute certain facts; those facts are deemed admitted. See Doc. 71. Additionally, many facts that Huntimer disputes lack "appropriate citations to the record." D.S.D. Civ. LR 56.1.B. This Court previously informed Huntimer that his "response must comply with Federal Rule of Civil Procedure 56 and the District of South Dakota's Civil Local Rule 56.1," and provided him with copies of the rules. Doc. 56 at 3. Therefore, Defendants' Statement of Undisputed Material Facts "will be deemed to be admitted" to the extent Huntimer fails to dispute Defendants' facts with adequate citations to the record. D.S.D. Civ. LR 56.1.D; see also Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."). Because Defendants move for summary judgment, this Court recites "the facts in the light most favorable to [Huntimer], the non-moving party." Baker v. Silver Oak Senior Living Mgmt., 581 F.3d 684, 685 (8th Cir. 2009). Where Huntimer disputes Defendants' Statement of Undisputed Material Facts with proper citations to the record, this Court will include both parties averments.

[3] This Court previously dismissed certain official capacity claims because, at that time, Huntimer was no longer in the DOC's custody. See Doc. 75. Huntimer now seems to be back in DOC's

was in DOC custody and housed at the Jameson Prison Annex ("JPA"), located in Sioux Falls, South Dakota. Id.

Defendant Darin Young was employed by the DOC as the Warden of the SDSP and JPA until July 2021. Id. ¶ 5. Defendant Charles Herrmann was previously employed by the DOC as a corrections officer. Id. ¶ 6. Defendant Stefanie Carey-Schaefer is employed by the DOC as a corrections officer. Id. ¶ 7. Defendant Rheannan Bills was previously employed by the DOC. Id. ¶ 8. Defendant Jake Rohwer is employed by the DOC as a unit coordinator. Id. ¶ 9. Rohwer previously held the position of lieutenant. Id. Defendant Amber Stevens was previously employed by the DOC as a corrections officer. Id. ¶ 10. Defendant Blaisley Elliot was previously employed by the DOC. Id. ¶ 11. Defendant Justin Barrett is employed by the DOC as a Corrections Sergeant. Id. ¶ 12. Defendant Jake Haley is employed by the DOC. Id. ¶ 13. Defendant Juan Greene is employed by the DOC as a corrections officer. Id. ¶ 14. Defendant Morgan Deppe is employed by the DOC as a Corrections Lieutenant. Id. ¶ 15. Defendant Rachel Schmitz (a/k/a Nurse Rachel) is employed by the DOC as a nurse. Id. ¶ 16. Defendant Cierra Harkema (a/k/a Nurse Sierra) is employed by the DOC as a nurse. Id. ¶ 17. Defendant Lance Seydel is employed by the DOC as a Staff Development and Training Lieutenant. Id. ¶ 18.

DOC policy 1.3.A.3 governs use of force within DOC facilities. Id. ¶ 27. The policy authorizes staff to use objectively reasonable force when necessary to carry out a lawful objective. Id. ¶ 28. A lawful objective includes when an inmate is physically resisting a lawful order or otherwise refusing to comply and that refusal poses an immediate threat to the safety

---

custody and moves this Court to revive his official capacity claims. See Doc. 77. The Court will address this motion below.

and wellbeing of staff, the inmate, or others. Id. Reasonable use of force is also allowed to

prevent an inmate from hurting himself. Id.

### A. April 18–19, 2021

On April 18, 2021, at about 10:25 p.m., Lieutenant Charles Herrmann was asked to report

to Unit A of JPA because Huntimer was not complying with officers' verbal commands. Id.

¶ 29.[4] Herrmann was the Officer in Charge ("OIC") at the time. Id. Huntimer reported he had

suicidal ideations and, as a result, was placed in a cell with a camera so he could be monitored.

Id. While he was being moved to his new cell, Huntimer used profane language. Id. Shortly

after being put in his new cell, Huntimer scratched the plexi-glass case protecting the cell's

camera. Id. ¶ 30.[5] Because Huntimer's actions were obstructing the camera's view, Herrmann

went to speak with Huntimer. Id. Huntimer claims Herrmann threatened to spray him with "Cell

---

[4] Huntimer objects to this fact because he asserts Aguirre's affidavit, Doc. 48, is inadmissible
hearsay. Doc. 71 ¶ 29. He claims that, because Aguirre is not a party to the case and knows
nothing about the events in question, this Court cannot consider her affidavit. Id. On this point,
however, Aguirre's affidavit states: "Lt. Herrmann wrote several reports regarding his
interactions with Huntimer on April 18-19, 2021, including a use-of-force incident. I obtained
the reports from [the Case Offender Management System ('COMS')] and they are exhibits
without any changes made." The exhibit cited by Defendants in their Statement of Undisputed
Facts is a prison report by Charles Herrmann detailing the April 18, 2021 incident with
Huntimer. Doc. 47-1. Although it is unclear whether Huntimer objects to the actual exhibits
introduced by Defendants, these type of prison institutional records are admissible under the
business records exception to hearsay pursuant to Federal Rule of Evidence 803(6). See
Thompson v. Ault, No. 10-CV-00232, 2013 WL 12088582, at *1 n.2 (S.D. Iowa Mar. 8, 2013);
Stojkowski v. Fisher, No. CIV. 10-2390, 2011 WL 1831680, at *3 (D. Minn. Apr. 18, 2011),
R&R adopted, 2011 WL 1827469 (D. Minn. May 12, 2011); Cobb v. Knode, No. CIV. 09-4110,
2010 WL 3608814, at *3–4 (D.S.D. Sept. 9, 2010)). Thus, the prison records introduced by
Defendants are admissible and will be considered by this Court. This Court also finds that
Aguirre's statements contained in her affidavit "are based on her personal knowledge and her
review of the official records maintained by the [DOC]" and thus are not hearsay. Stojkowski,
2011 WL 1831680, at *3. Because Huntimer does not otherwise object to this paragraph, the
facts within this paragraph are deemed admitted.
[5] Huntimer objects to Defendants' use of exhibits introduced through Aguirre's affidavit. Doc.
71 ¶ 30. As mentioned above, these types of exhibits satisfy the business record exception to
hearsay and may be considered by this Court.

buster OC spray"[6] if he continued to act out.  Doc. 71 ¶ 30.  Huntimer continued to use vulgar

language with Herrmann during this exchange.  Doc. 51 ¶ 30.

About three hours later, Huntimer scratched the protective case a second time.  Id. ¶ 31;

Doc. 71 ¶ 31.  Herrmann was notified and went to Huntimer's cell, where he continued his

efforts.  Doc. 51 ¶ 31.  Herrmann deployed OC spray in the cell for 10–15 seconds.  Id.; Doc. 71.

¶ 31.  Approximately 10 minutes later, Herrmann put Huntimer in wrist restraints and moved

him to a different holding cell.  Doc. 51 ¶ 31.  Neither Huntimer nor any staff members reported

any injuries.  Id.  Huntimer declined an offer to take a hot shower to decontaminate.  Id. ¶ 32;

Doc. 71 ¶ 32.  No injuries were visible on Huntimer.  Doc. 51 ¶ 32.  A nurse then assessed an

alert Huntimer and noted he was not coughing or having trouble breathing.  Id. ¶ 33.  Huntimer

again refused decontamination.  Id.; Doc 71 ¶ 33.

### B.  October 20, 2021

On October 20, 2021, Huntimer was again in a camera cell at JPA.  Doc. 51 ¶ 34.[7]  At

about 6:23 p.m., Huntimer took a puff of an unknown item.  Id.[8]  He began vomiting a few

minutes later.  Id.  Staff called a "code red"[9] and responded to his cell.  Id.  Rohwer was the OIC

at this time.  Id. ¶ 36.

When staff arrived, Huntimer had vomit on his clothes.  Id. ¶ 37.  Staff requested

Huntimer to come to the cell front so hand restraints could be placed on him.  Id.  Huntimer did

---

[6] "Cell buster OC spray" is a generic term for a powerful, tactical pepper spray optimized for use in confined areas because it emits a heavy fog, so direct facial application is not necessary.  Doc. 71 ¶ 44.

[7] Huntimer again objects to consideration of the prison records.  However, as stated above, the Court may consider these records.

[8] Staff ended up locating a rolled-up piece of paper in the toilet that had one burnt end.  Id. ¶ 40. There was another rolled up piece of paper on his storage locker that had a hollowed-out metal piece on one end.  Id.  There was a black, unknown substance burnt inside.  Id.

[9] "Code red" is a term used to indicate an ongoing emergency.  Id. ¶ 35.

not submit to hand restraints. Id. Corrections staff then entered the cell along with medical staff to assess and assist Huntimer. Id. ¶ 37.

Nurse Rachel Schmitz tried to provide Huntimer with oxygen and wipe the vomit off his face. Id. ¶ 38. At this time, Huntimer was swinging his arms and hit Schmitz on the arm. Id. Rohwer observed Huntimer having slurred speech and uncoordinated movements. Id. ¶ 39. Rohwer was informed that Huntimer also had a high pulse. Id. Huntimer then became paranoid about the number of staff present and having to go to health services. Id. Rohwer tried to place Huntimer in hand restraints. Id. Huntimer, however, remained uncompliant with staff's commands. Id. Given Huntimer's non-compliance, the staff exited the cell. Id. ¶ 42.

Corrections staff then began preparing to re-enter the cell utilizing specialized equipment so that Huntimer could be removed. Id. Rohwer viewed Huntimer's actions as having reached the level of aggressive resistance. Id. ¶ 43. Huntimer was still unrestrained and would not allow restraints to be placed on him. Id. ¶ 45. Around 6:40 p.m., Rohwer deployed OC spray into Huntimer's cell, along with additional verbal commands to submit to hand restraints. Id. Defendants contend Huntimer continued to refuse all directives. Id. Huntimer claims he was unconscious during this time. Doc. 15 ¶ 38; Doc. 71 ¶ 45; Doc. 73 at 5.[10] Huntimer maintains Rohwer used so much OC spray that corrections staff had to evacuate nearby inmates out of their cells. Doc. 71 ¶ 45.

Eventually, Huntimer complied and was taken to health services. Id. ¶¶ 47–48. He had no injuries. Id. When asked if he was injured, Huntimer responded in the negative. Id. Rohwer maintains he did not use the OC Spray to punish, discipline, or otherwise retaliate against

---

[10] Huntimer also claims to have personal knowledge of the incident despite previously saying he was unconscious during this interaction. The Court will address this discrepancy below when analyzing Huntimer's claims against Rohwer.

Huntimer. Id. ¶ 49. Rohwer states he was attempting to resolve the situation so Huntimer could receive aid. Id. Rohwer believes his actions were within the permissive scope of the DOC's Use of Force Policy. Id. ¶ 54. The parties do not dispute that corrections staff tried to get the situation under control as fast as possible and that Huntimer did not have a medical condition that would prohibit the use of OC spray. Id. ¶¶ 41, 55.[11]

## II.    Legal Standard

### A.  Summary Judgment

A court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant meets its burden, the nonmoving party must establish the existence of a genuinely disputed material fact by either "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

When ruling on a summary judgment motion, courts must view the facts and inferences fairly drawn from them in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). But courts do not "resort to speculation." Roberts v. Park Nicollet Health Servs., 528 F.3d 1123, 1126 (8th Cir. 2008)

---

[11] Huntimer objects to Defendants' paragraph 55 on grounds that he "had a constitutional right to be free from tort[i]ous assault out of malicious intent, bodily harm, and excessive force." Doc. 71 ¶ 55. Huntimer, however, does not object to the assertion that he did not have a medical condition that would prohibit the use of OC spray. As a result, this fact is deemed admitted. See D.S.D. Civ. LR 56.1.B; Fed. R. Civ. P. 56(c).

(cleaned up). The judge's function during summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

### B. Qualified Immunity

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Mullenix v. Luna, 577 U.S. 7, 11 (2015) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). Put differently, qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (cleaned up). Its protection applies "regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson, 555 U.S. at 231 (cleaned up).

When the defense of qualified immunity is invoked "on summary judgment, a defendant official is entitled to qualified immunity unless (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." Walton v. Dawson, 752 F.3d 1109, 1116 (8th Cir. 2014) (cleaned up). Under this two-pronged inquiry, "courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." al-Kidd, 563 U.S. at 735. A district court may find for the defendant on either prong, but it "may not deny qualified immunity without answering both questions in the plaintiff's favor." Watson v. Boyd, 2 F.4th

1106, 1112 (8th Cir. 2021) (quoting Walton, 752 F.3d at 1116). "A district court should not deny summary judgment any time a material issue of fact remains on the constitutional violation claim because to do so could undermine the goal of qualified immunity." Id. (cleaned up).

For the second prong, a right is clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Reichle v. Howards, 566 U.S. 658, 664 (2012) (cleaned up). The "burden to demonstrate that the law is clearly established" is on the plaintiff. Morgan v. Robinson, 920 F.3d 521, 524 (8th Cir. 2019) (en banc). "The longstanding principle is that clearly established law should not be defined at a high level of generality." Id. at 523 (cleaned up). Rather, "the clearly established law must be particularized to the facts of the case." Id. at 524 (cleaned up). "There need not be a case 'directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.'" Id. (quoting al-Kidd, 563 U.S. at 741).

## III.    DICUSSSION

### A. Rule 56(d)

Pursuant to Federal Rule of Civil Procedure 56(d), Huntimer asks this Court to deny Defendants' Motion for Summary Judgment or, in the alternative, defer consideration of the motion until he has had more time to conduct discovery. Doc. 69 at 14–15. Huntimer supports his request with a long list of materials that he believes are necessary to resist summary judgment. Id.[12] Defendants maintain this Court should deny Huntimer's request because he has not properly stated facts that are necessary to respond to their motion. Doc. 72 at 2. Defendants

---

[12] Huntimer seeks copies of grievances he filed, "copies of every document use of force incident, including videos thereof" in JPA for 10 years, certain Defendants' training records for 10 years, DOC manuals, procedures, and policies, copies of his medical records, and all reports, emails, and videos pertaining to Herrmann and Rohwer's use of force against him. Doc. 69 at 16.

contend Huntimer's request is an improper "fishing expedition." Id. at 3. Huntimer replied that

he is not "fishing for discovery" and maintained his Eighth Amendment failure to train argument

in his Response to Defendants' Motion for Summary Judgment was intended "to tie into his Rule

56(d) request." Doc. 73 at 2–3.

Rule 56(d) provides: "If a nonmovant shows by affidavit or declaration that, for specified

reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer

considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take

discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). Stated another way,

Rule 56(d) "allows a party to request a delay in granting summary judgment if the party can

make a good faith showing that postponement of the ruling would enable it to discover additional

evidence which might rebut the movant's showing of the absence of a genuine issue of material

fact." Robinson v. Terex Corp., 439 F.3d 465, 467 (8th Cir. 2006) (citing Fed. R. Civ. P. 56(f)).

"To warrant time for additional discovery under Rule 56(d), Plaintiffs must show: '(1) that they

have set forth in affidavit form the specific facts that they hope to elicit from further discovery,

(2) that the facts sought exist, and (3) that these sought-after facts are "essential" to resist the

summary judgment motion.'" Johnson v. Moody, 903 F.3d 766, 772 (8th Cir. 2018) (quoting

Toben v. Bridgestone Retail Operations, LLC, 751 F.3d 888, 895 (8th Cir. 2014)). "Rule 56(d)

does not condone a fishing expedition where a plaintiff merely hopes to uncover some possible

evidence of unlawful conduct." Id. (quoting Toben, 751 F.3d at 895). District courts have "wide

discretion in deciding a 56(d) motion." Id.

Also relevant to this Court's determination is that summary judgment motions claiming

qualified immunity "should be resolved 'at the earliest possible stage in litigation' to ensure that

insubstantial damage claims against government officials are resolved 'prior to discovery.'" Id.

11

(quoting <u>Pearson</u>, 555 U.S. at 231–32). "If the defendant-official has made a properly supported motion, the plaintiff . . . must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden . . . ." <u>Crawford-El v. Britton</u>, 523 U.S. 574, 600 (1998) (cleaned up).

In his affidavit, Doc. 70, and Response to Plaintiff's Motion for Summary Judgment, Doc. 69, Huntimer claims large volumes of documents, policies, and videos are necessary to resist Defendants' Motion for Summary Judgment. <u>Id.</u> at 16. Huntimer, however, fails to state specific reasons why he "cannot present facts essential to justify [his] opposition" to Defendants' motion. Fed. R. Civ. P. 56(d); <u>see also Johnson</u>, 903 F.3d at 772 (Courts can require a plaintiff to "put forward specific, nonconclusory factual allegations" when "defendant asserts a pre-discovery claim of qualified immunity." (cleaned up)). Huntimer's request instead "merely hopes to uncover some possible evidence of unlawful conduct" and is thus an improper fishing expedition. <u>Johnson</u>, 903 F.3d at 772. Accordingly, this Court denies Huntimer's Rule 56(d) request to defer ruling on the summary judgment motion and proceeds to analyze Defendants' motion.

### B.  42 U.S.C § 1983

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C § 1983. "Liability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed." <u>Faulk v. City of St. Louis</u>, 30 F.4th 739, 744 (8th Cir. 2022) (quoting

Wilson v. Northcutt, 441 F.3d 586, 591 (8th Cir. 2006)).  Therefore, this Court will address each claim and Defendant in turn, grouping Defendants together when appropriate.

     **i.**    **Excessive Force**

Defendants first seek summary judgment on Huntimer's Eighth Amendment excessive force claims against Herrmann and Rohwer asserting both Defendants are entitled to qualified immunity.  Doc. 47 at 6–11.  Huntimer maintains both Herrmann and Rohwer are not protected by qualified immunity.  Doc. 69 at 3–4.

The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from the "unnecessary and wanton infliction of pain." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).  In considering an Eighth Amendment claim for excessive force, the "'core judicial inquiry' is whether the accused officers applied force 'in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Peterson v. Heinen, 89 F.4th 628, 635 (8th Cir. 2023) (quoting Hudson, 503 U.S. at 7).  To determine whether force was reasonable and applied in good faith, courts consider "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Id. (quoting Hudson, 503 U.S. at 7).

Even if an officer "arguably erred when they" acted, the court must determine whether "there was no plausible basis for [their] belief that this degree of force was necessary." Id. at 640 (alteration in original) (quoting Whitley, 475 U.S. at 323).  "If the evidence shows only a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives, the case should not go to the jury." Id. at 639 (cleaned up).

### a.  Herrmann

Defendants first claim that Herrmann did not use excessive force against Huntimer in April 2021. Doc. 47 at 8–9. Defendants assert Huntimer had reported being suicidal and that officers placed him in a camera-monitored cell to make sure he did not harm himself. Id. at 8. Defendants contend Huntimer began to thwart their efforts to monitor him by putting his hand in front of the camera and scratching its protective plexiglass case. Id. Defendants maintain that Herrmann deployed his OC spray to ensure Huntimer's safety and restore discipline because Huntimer was non-compliant. Id. Huntimer, on the other hand, claims that he was not "actively resisting" when Herrmann sprayed him "without a warning." Doc. 69 at 6. He contends Herrmann used excessive force by spraying him for 10-15 seconds and making him sit in it for 10 minutes before he was allowed to cuff up and exit the cell. Id.

Generally, a corrections officer is entitled to qualified immunity if they pepper spray an inmate that disobeys an order, uses profanity or abusive language, or threatens an officer. See Peterson, 89 F.4th at 636 (holding that officers were entitled to qualified immunity for pepper spraying an inmate in the face after he covered his cell's security camera, threatened officers, and resisted their attempt to restrain him); Jones v. Shields, 207 F.3d 491, 496 (8th Cir. 2000) (holding that "limited application of [chemical spray] to control a recalcitrant inmate" is a "tempered response by [correctional officer]" and should rarely be subject to judicial oversight).

Huntimer was placed in a cell with a camera so he could be monitored because he reported having suicidal thoughts. Doc. 51 ¶ 29. Around five minutes after being put in his new cell, Huntimer scratched the camera's protective case. Id. ¶ 30.[13] Herrmann then went to the cell

---

[13] Huntimer disputes he "damage[ed] the camera." Doc. 71 ¶ 30. Defendants, however, do not claim in this paragraph that Huntimer damaged the camera. Regardless, Huntimer admits to "scratch[ing] the protective plexi-glass box around the camera." Id. Huntimer also objects to

to speak with Huntimer. Id. During that conversation, Herrmann threatened him with OC spray if he continued to act out. Doc. 71 ¶ 30. Huntimer admits using vulgar language with Herrmann during this exchange. Doc. 51 ¶ 30. A few hours later, Huntimer scratched the camera case a second time. Id. ¶ 31; Doc. 71 ¶ 31. Herrmann was notified and went to the cell. Doc. 51 ¶ 31. When Herrmann arrived, Huntimer continued acting out. Id. Herrmann then deployed OC spray into the cell for 10–15 seconds. Id.; Doc. 71. ¶ 31. Huntimer claims Herrmann did not give him a warning or chance to surrender before discharging the OC spray. Doc. 71 ¶ 31. Huntimer claims to have pleaded with Herrmann to stop and let him cuff-up, so that he could leave the contaminated cell. Id. Approximately 10 minutes later, Herrmann handcuffed Huntimer and moved him to a different holding cell. Doc. 51 ¶ 31. Huntimer did not report any injuries. Id.

After being warned not to cover the cell's camera three hours earlier, Huntimer disobeyed Herrmann's orders and tampered with the camera again. Huntimer asserts he did so as a tactic to force the officers to give him a bible that he had requested earlier. Doc. 70 ¶¶ 7–8. Huntimer also admits he knew scratching the case around the camera would result in "a monetary fine and disciplinary infraction" and "was willing to accept those sanctions." Id. ¶ 8. By covering and interfering with the camera twice in his cell, Huntimer threatened jail security. See Peterson, 89 F.4th at 639 ("Covering a security camera immediately threatens jail security."). Thus, based on Herrmann's prior warning to Huntimer and Huntimer's knowledge that he was not allowed to interfere with the camera, his actions warranted discipline. See id. at 638 (holding that discipline was warranted and spraying of defendant was not excessive force when defendant was warned that he would be sprayed, was furtive, and demonstrated potentially dangerous behavior). "And

---

Defendants' use of exhibits introduced through Aguirre's affidavit. Id. As mentioned above, these exhibits are admissible as business records and may be considered by this Court.

while [10–15 second] burst of chemical spray inside [Huntimer's] cell was no doubt 'uncomfortable and unpleasant,' [this Court] cannot say it was, under these circumstances, 'repugnant to the conscience of mankind.'" Id. (quoting Jackson v. Gutzmer, 866 F.3d 969, 977–78 (8th Cir. 2017)); see also id. at 639 ("A limited application of chemical spray to control a recalcitrant inmate . . . constitutes a tempered response by prison officials when compared to other forms of force." (cleaned up)).  Leaving Huntimer in his cell for 10 minutes before transferring him to another cell is also not "repugnant to the conscience of mankind."  Id. (quoting Jackson, 866 at 977–78); see also Jones, 207 F.3d at 492 (holding that no Eighth Amendment violation occurred when officer sprayed inmate in face with chemical spray and then handcuffed him against the wall for "10 or 15, maybe 20 minutes" before taking the inmate to the infirmary).  Accordingly, Herrmann is entitled to qualified immunity and summary judgment will be entered in his favor.

        **b.  Rohwer**

        Defendants next contend Rohwer's actions were objectively reasonable when he released OC spray into Huntimer's cell in October 2021.  Doc. 47 at 9.  Defendants claim Huntimer disregarded multiple orders to submit to restraints, aggressively resisted restraints, and hit a nurse while doing so.  Id. at 10.  Defendants maintain that discharging the OC spray was the only way to secure Huntimer's compliance and get him evaluated by medical personnel.  Id. Huntimer, on the other hand, claims that he was unable to comply with orders because he was having a seizure and could not control his actions.  Doc. 69 at 7.  Huntimer also maintains Rohwer used a stronger chemical spray and used more than was necessary on him.  Id.

        On October 20, 2021, Huntimer was in his cell and took a puff of an unknown item.  Doc. 51 ¶ 34.  He soon began vomiting.  Id.  Huntimer claims he "was unconscious, convulsing, and

16

having a seizure." Doc. 15 ¶ 38.[14]  Staff called a code red and requested Huntimer to come to the

cell front so he could be placed in hand restraints. Doc. 51 ¶ 34.  Huntimer alleges he could not

comply because he had no control over his body movements. Id. ¶ 37; Doc. 71 ¶ 37.  Medical

staff then entered the cell to assess and assist Huntimer. Doc. 51 ¶ 37.  At this time, Huntimer's

arms were "swinging back and forth" and hit Nurse Rachel Schmitz, who was trying to

administer aid to Huntimer. Id. ¶ 38; Doc. 71 ¶ 38.[15]  Rohwer failed to place Huntimer in

handcuffs. Doc. 51 ¶ 39.  Ultimately, Rohwer deployed OC spray into Huntimer's cell and gave

additional commands for Huntimer to submit to handcuffs. Id. ¶ 45.

Huntimer claims in his Amended Complaint that he was unconscious when Rohwer

sprayed him, Doc. 15 ¶ 38, and did not come to his senses until about twenty minutes later, Id.

¶ 44.  Huntimer, however, in a later affidavit,[16] which he relies on to dispute Defendants'

Statement of Undisputed Material Facts, recounts the events as if he were conscious the whole

time. See Doc. 70 ¶¶ 19–28.

"Parties to a motion for summary judgment cannot create sham issues of fact in an effort

to defeat summary judgment." Am. Airlines, Inc. v. KLM Royal Dutch Airlines, Inc., 114 F.3d

108, 111 (8th Cir. 1997) (citing RSBI Aerospace, Inc. v. Affiliated FM Ins., 49 F.3d 399, 402

(8th Cir. 1995)).  Accordingly,

> a party should not be allowed to create issues of credibility by contradicting his
> own earlier testimony. Ambiguities and even conflicts in a deponent's testimony
> are generally matters for the jury to sort out, but a district court may grant summary
> judgment where a party's sudden and unexplained revision of testimony creates an
> issue of fact where none existed before. Otherwise, any party could head off a

---

[14] See also Doc. 70 ¶ 21(Huntimer stating he does not "remember much of the incident."); Doc.
71 ¶ 37 (Huntimer admitting he "was unconscious, sitting in a chair, and seizing.").
[15] Huntimer acknowledges hitting Schmitz but claims it was unintentional. Doc. 71 ¶ 38.
[16] Huntimer's affidavit was filed over a year after his Amended Complaint and in response to
Defendant's Motion for Summary Judgment. See Docs. 15, 70.

summary judgment motion by supplanting previous depositions *ad hoc* with a new affidavit, and no case would ever be appropriate for summary judgment.

Wilson v. Westinghouse Elec. Corp., 838 F.2d 286, 289 (8th Cir. 1988) (cleaned up).  Given Huntimer's inconsistent testimony on his consciousness during the events in question, this Court must determine whether Huntimer's retelling of the events in his affidavit is a "sudden and unexplained revision of testimony [that] creates an issue of fact where none existed before." Id.

Huntimer asserts in his Amended Complaint that he was "unconscious, convulsing, and having a seizure." Doc. 15 ¶ 38.  He claims he did not regain consciousness for 20 minutes. Id. ¶ 44.  He maintains that once he regained his senses he stood up and "walk[ed] to the cell front to cuff up." Id. ¶ 45.  His affidavit, however, states he heard a correctional officer telling him to come to the cell door and cuff up, but could not do so and told the officer that he could not stand multiple times "only to be sprayed more." Doc. 70 ¶ 23.  His affidavit also states the officer stopped spraying him only after a nurse told the officer to stop spraying him. Id. ¶ 24. Huntimer, however, maintains in his Response to Defendants' Statement of Undisputed Material Facts, Doc. 71, that he "was unconscious when [Rohwer] . . . decided to use extreme force and in excess." Id. ¶ 45.  He contradicts himself again in his sur-reply brief by saying Rohwer "sprayed [him] while he was [incapacitated] due to medical issues." Doc. 73 at 5.

This Court finds that Huntimer's affidavit, Doc. 70, conflicts with his earlier sworn statements in his Amended Complaint, Doc. 15,[17] and that he is not merely attempting to explain an unclear portion of his testimony.  Huntimer thrice admits he was unconscious during Rohwer's actions. See Doc. 15 ¶ 38; Doc. 71 ¶ 45; Doc. 73 at 5.  Huntimer then tries to contradict his earlier testimony by recounting events that occurred while he was "unconscious."

---

[17] Huntimer's Amended Complaint is a verified complaint signed by him in accordance with 28 U.S.C. § 1746. See Doc. 15 at 12.

Doc. 70 ¶¶ 19–28.  Huntimer, "cannot avoid summary judgment by contradicting his own earlier testimony."  Prosser v. Ross, 70 F.3d 1005, 1008 (8th Cir. 1995) (cleaned up).  Therefore, this Court will not consider Huntimer's affidavit, Doc. 70, to the extent it sought to introduce evidence of events that occurred while he was unconscious.

Moreover, because Huntimer claims he was unconscious during the events in question, Doc. 15 ¶¶ 38, 44, this Court cannot rely on any of his statements about these events because he lacks personal knowledge.  See Fed. R. Evid. 701; see also In re Air Crash at Little Rock Ark., 291 F.3d 503, 515 (8th Cir. 2002) (holding that lay witness opinion testimony generally must be based on personal knowledge or perception); Luepker v. Taylor, No. 09CV1657, 2010 WL 2696701, at *3–4 (E.D. Mo. July 6, 2010) (striking portion of affidavit where plaintiff claimed he was incoherent because the testimony was not based on personal knowledge).  Because Huntimer only relied on his affidavit, which this Court cannot consider, to dispute Defendants' facts, Defendants' Statement of Undisputed Material Facts, Doc. 51, is admitted regarding events that occurred while Huntimer was unconscious.

Given this Court's above determination, the undisputed facts show Huntimer was non-compliant, unrestrained, and hit Schmitz.  Therefore, Rohwer's spraying of Huntimer's cell under these circumstances was not "repugnant to the conscience of mankind."  Peterson, 89 F.4th at 638 (quoting Jackson, 866 at 977–78); see also id. at 639 ("A limited application of chemical spray to control a recalcitrant inmate . . . constitutes a tempered response by prison officials when compared to other forms of force." (cleaned up)); Jones, 207 F.3d at 496 ("Summary applications of force are constitutionally permissible when prison security and order, or the safety of other inmates or officers, has been placed in jeopardy." (cleaned up)).  Huntimer also claims Rohwer's failure to allow him to decontaminate after spraying him violated his Eighth

Amendment right against excessive force. Doc. 69 at 8. The undisputed facts, however, show Huntimer was immediately taken to health services after he was removed from his cell, had no visible injuries, and reported he was not injured. Doc. 51 ¶¶ 47–48. Furthermore, a failure to decontaminate claim is "not an excessive force claim." Burns v. Eaton, 752 F.3d 1136, 1140 (8th Cir. 2014). Rohwer is thus entitled to qualified immunity on the excessive force claim and summary judgment is granted in his favor.

### c. Seydel

Defendants next request summary judgment on Huntimer's excessive force claim against Seydel in his official capacity. Doc. 47 at 9–11. Seydel was not present during any of the events in question. Doc. 51 ¶ 51. Huntimer does not dispute this fact. Doc. 71 ¶ 51. Huntimer also does not argue the excessive force claim against Seydel should survive summary judgment. See Doc. 69.[18] "[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument." Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs., 558 F.3d 731, 735 (8th Cir. 2009). "[D]istrict courts have repeatedly held that when a non-moving party fails to respond to a motion for summary judgment with respect to certain claims or arguments, that party is deemed to have abandoned the claims and waived the arguments." Wegmann v. Ethicon, Inc., No. 20-CV-00704, 2020 WL 6680893, at *3 (E.D. Mo. Nov. 12, 2020) (collecting cases). By failing to address his excessive force claim against Seydel, Huntimer waived this claim. And even if Huntimer did not waive this claim, this Court would still find that the undisputed facts do not allow the excessive force claim against Seydel to survive summary judgment. Thus, summary judgment is granted for Seydel.

---

[18] Huntimer's argument about Seydel is solely focused on the failure to train claim.

### ii.    Failure to Protect

Defendants next move for summary judgment on Huntimer's failure to protect claims against Schaeffer, Bills, Elliot, Green, Stevens, Deppy, Barret,[19] Haley, Schmitz, and Harkema. Doc. 47 at 11–15. Huntimer argues that if his excessive force allegations against Herrmann and Rohwer succeed then these Defendants had a duty to protect him. Doc. 69 at 9.

"A prison official 'violates the Eighth Amendment if he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm . . . .'" Vandevender v. Sass, 970 F.3d 972, 975 (8th Cir. 2020) (quoting Jackson v. Everett, 140 F.3d 1149, 1151 (8th Cir. 1998)). "This claim has an objective component, whether there was a substantial risk of serious harm to the inmate, and a subjective component, whether the prison official was deliberately indifferent to that risk." Id. For an assault on an inmate to result in liability for a prison official, the official must have actually noticed the excessive force and had adequate time to intervene to satisfy the deliberately indifferent prong. Krout v. Goemmer, 583 F.3d 557, 565–66 (8th Cir. 2009). Even if the prison official were aware of an assault and had time to act, plaintiff still must show the official acted with more "than gross negligence" to satisfy the deliberate indifference standard. Est. of Rosenberg by Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). "[W]hile an officer may be liable for failing to intervene to prevent another officer's use of excessive force against a subject, such liability is contingent upon, among other things, the primary officer using excessive force in the first place." Mortensbak v. Butler, 102 F. Supp. 3d 1085, 1099 (D.S.D. 2015) (citing Hicks v. Norwood, 640 F.3d 839, 843 (8th Cir.2011)).

---

[19] The undisputed facts establish Barrett was not present during any of the events in question. Doc. 71 ¶ 46. Thus, summary judgment should be granted in his favor for this reason in addition to the ones stated below.

Huntimer, in his Amended Complaint, claims these Defendants "failed to intervene" and were deliberately indifferent to his rights by allowing Herrmann and Rohwer to use excessive force against him. Doc. 15 ¶ 64. This Court, however, found above that Herrmann and Rohwer did not use excessive force against Huntimer. These Defendants thus did not owe a duty to Huntimer to intervene and cannot be subject to a failure to protect claim. See Mortensbak v. Butler, 102 F. Supp. 3d 1085, 1099 (D.S.D. 2015) (citing Hicks v. Norwood, 640 F.3d 839, 843 (8th Cir. 2011)). Huntimer also failed to show Defendants acted with more "than gross negligence." Est. of Rosenberg, 56 F.3d at 37. Thus, this Court grants summary judgment for Defendants on the failure to protect claims.

### iii.    Deliberate Indifference to Serious Medical Needs

Defendants next seek summary judgment on Huntimer's deliberate indifference to serious medical needs claims against Schmitz and Harkema. Doc. 47 at 13–15. Defendants maintain Schmitz and Harkema's efforts to provide Huntimer medical care "was a far cry from 'apathy or unconcern.'" Id. at 15 (quoting Leonard v. St. Charles Cnty., 570 F. Supp. 3d 707, 722 (E.D. Mo. 2021), aff'd sub nom. Leonard v. St. Charles Cnty. Police Dep't, 59 F.4th 355 (8th Cir. 2023)). Huntimer, on the other hand, argues Schmitz and Harkema's omissions allowing Rohwer to spray him on October 20, 2021, while he was having a medical emergency constituted a deliberate indifference to his serious medical needs. Doc. 69 at 11–12.

To succeed on his deliberate indifference claims against Schmitz and Harkema, Huntimer must show that (1) he suffered "an objectively serious medical need" and (2) that the "defendant actually knew of, but deliberately disregarded, such need." McRaven v. Sanders, 577 F.3d 974, 980 (8th Cir. 2009) (quoting Vaughn v. Gray, 557 F.3d 904, 908 (8th Cir. 2009)). "An objectively serious medical need is one that either has been diagnosed by a physician as

requiring treatment, or is so obvious that even a 'layperson would easily recognize the necessity for a doctor's attention.'" Jones v. Minn. Dep't of Corr., 512 F.3d 478, 481 (8th Cir. 2008) (quoting Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)). Huntimer's medical emergency was objectively serious given his condition and that staff called a code red. Doc. 51 ¶ 34. Accordingly, the first element of the test is met.

The second element requires a showing that Defendants "deliberately disregarded" a serious medical need—a greater burden than showing mere negligence. McCaster v. Clausen, 684 F.3d 740, 746 (8th Cir. 2012) (citing Alberson v. Norris, 458 F.3d 762, 765 (8th Cir. 2006)). To satisfy the second element, Huntimer must establish that Schmitz and Harkema "recognized that a substantial risk of harm existed *and* knew that their conduct was inappropriate in light of that risk." Shipp v. Murphy, 9 F.4th 694, 703 (8th Cir. 2021) (quoting Letterman v. Does, 789 F.3d 856, 862 (8th Cir. 2015)). Huntimer must show that Schmitz's and Harkema's mental state were "akin to criminal recklessness." Id. (quoting Vaughn, 557 F.3d at 908). When evaluating whether a defendant displayed deliberate indifference to a plaintiff's serious medical needs, courts consider the defendant's "actions in light of the information [the defendant] possessed at the time, the practical limitations of [the defendant's] position[,] and alternative courses of action that would have been apparent to an official in that position." Letterman, 789 F.3d at 862 (quoting Gregoire v. Class, 236 F.3d 413, 419 (8th Cir. 2000)). Examples of "[d]eliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed." Pietrafeso v. Lawrence Cnty., 452 F.3d 978, 983 (8th Cir. 2006) (quoting Vaughan v. Lacey, 49 F.3d 1344, 1346 (8th Cir. 1995)). "[M]ere disagreement with treatment decisions does not rise to the level

of a constitutional violation." <u>Langford v. Norris</u>, 614 F.3d 445, 460 (8th Cir. 2010) (quoting <u>Alberson</u>, 458 F.3d at 765).

After the "code red" was called, Schmitz entered Huntimer's cell, provided him with oxygen, and wiped the vomit off his face. Doc. 51 ¶ 38. While Schmitz was rendering Huntimer aid, he hit her. <u>Id.</u> Despite this, Schmitz and the rest of the staff tried to quickly get the situation under control. <u>Id.</u> ¶ 41. Medical staff exited Huntimer's cell only after officers failed to restrain Huntimer. <u>Id.</u> ¶¶ 39, 42. Once Huntimer became compliant, staff took him to health services where he did not have any injuries. <u>Id.</u> ¶ 47–48. The undisputed facts do not show Schmitz acted indifferently to Huntimer's medical needs. As for Harkema, the record barely establishes she was present during these events let alone that she was deliberately indifferent to Huntimer's medical needs. Thus, Schmitz and Harkema are entitled to qualified immunity and summary judgment is granted in their favor.

### iv.    Failure to Train

Defendants next seek summary judgment on Huntimer's failure to train claims against Young, in his individual capacity only, and Seydel, in both his official and individual capacities. Doc. 47 at 15–16. Defendants argue summary judgment is appropriate because Young and Seydel did not receive notice of unconstitutional acts by their subordinates. <u>Id.</u> at 16. They also maintain summary judgment is appropriate because Herrmann and Rohwer were properly trained on use of force. <u>Id.</u> at 16. Conversely, Huntimer asserts that Young and Seydel failed to give adequate guidance to subordinates and had notice of their subordinates' unconstitutional conduct at the time of Rohwer's actions in October 2021 because Huntimer had already filed his grievance against Herrmann. Doc. 69 at 13–14.

### a. Individual Capacity (Young and Seydel)

For Young and Seydel to have violated Huntimer's constitutional rights by failing to supervise Herrmann and Rohwer, Huntimer must show that Seydel and Young: (1) "Received notice of a pattern of unconstitutional acts committed by subordinates;" (2) "Demonstrated deliberate indifference to or tacit authorization of the offensive acts;" (3) "Failed to take sufficient remedial action;" and (4) "That such failure proximately caused injury to [Huntimer]." Parrish v. Ball, 594 F.3d 993, 1002 (8th Cir. 2010) (quoting Jane Doe A v. Special Sch. Dist. of St. Louis Cnty., 901 F.2d 642, 645 (8th Cir. 1990)).

Seydel is a Staff Development and Training Lieutenant for the DOC. Doc. 51 ¶ 18. Young was the Warden of the SDSP during the April interaction between Huntimer and Herrmann but retired before Huntimer's October interaction with Rohwer. Id. ¶ 5.[20] DOC policy 1.3.A.3 governs the use of force within DOC facilities. Id. ¶ 27. This policy allows staff to use reasonable force when an inmate is physically resisting a lawful order or otherwise refusing to comply and that refusal poses an immediate threat to the safety and wellbeing of staff, the inmate, or others. Id. ¶ 28. Corrections officers are required to attend use of force training before interacting with prisoners. Id. ¶ 50. Both Herrmann and Rohwer attended use of force training and had reacknowledged their understanding of Policy 1.3.A.3 multiple times. Id. ¶¶ 52–53.

---

[20] Along with the reasons stated below, Huntimer's claim against Young must fail because there is no evidence that Young had notice of any unconstitutional conduct at the time of Herrmann's actions. Young was no longer employed by the DOC at the time of Rohwer's actions and as such cannot be held liable for any failure to train claim stemming from this event.

Huntimer, however, asserts this case must go forward because Defendants have shown no evidence that they have implemented training in compliance with SDCL § 24-2-37.[21] Id. Huntimer's argument is unavailing. This Court denied his related Rule 56(d) request seeking large volumes of videos, records, policies, and reports, Doc. 73 at 2–3, because Huntimer was seeking to embark on a fishing expedition and "merely hop[ing] to uncover some possible evidence of unlawful conduct." Johnson, 903 F.3d at 772 (quoting Toben, 751 F.3d at 895). Similarly, Huntimer's attempt here to create a dispute of material fact where there is not one fails because, to counter Defendants' "pre-discovery claim of qualified immunity," Huntimer must "put forward specific, nonconclusory factual allegations." Id. (quoting Crawford-El, 523 U.S. at 598-600).

Huntimer has not put forward any "specific, nonconclusory factual allegations" on any of the elements for a failure to train claim. Id. The undisputed facts show Herrmann and Rohwer were both trained on use of force and had reacknowledged the governing policy multiple times. Doc. 51 ¶¶ 52–53. Huntimer has not shown that Young or Seydel were on notice of any specific unconstitutional conduct (because this Court found Herrmann and Rohwer did not use excessive force above) or shown any evidence establishing that they acted with deliberate indifference to any unconstitutional acts. See Parrish, 594 F.3d at 1002 (holding that defendant was entitled to qualified immunity when no facts showed he "[r]eceived notice of a pattern of unconstitutional acts committed by his subordinates"). Therefore, the summary judgment record, even when viewed in a light most favorable to Huntimer, reveals nothing to suggest that Young and Seydel

---

[21] "Officers within any state prison shall receive training on recognizing the signs and symptoms of mental health problems and defusing mental health crises. After initial training, each officer shall attend further training at least once every four years." SDCL § 24-2-37

are individually liable on Huntimer's failure to train claims. See id. (Supervisors are entitled to summary judgment on failure to train claims "unless a reasonable supervisor would have known that his training program (or lack thereof) was likely to result in the specific constitutional violation at issue.").

### b. Official Capacity (Seydel)

"A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent." Elder–Keep v. Aksamit, 460 F.3d 979, 986 (8th Cir. 2006) (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985)). Thus, to succeed in his action against Seydel in his official capacity, Huntimer must prove the DOC "itself caused the constitutional violation at issue." Parrish, 594 F.3d at 997 (cleaned up). To establish liability on the part of the DOC under § 1983, Huntimer "must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." Moyle v. Anderson, 571 F.3d 814, 817 (8th Cir. 2009) (cleaned up). Minimal training "alone will not satisfy a § 1983 claim for failure to train." Parrish, 594 F.3d at 997 (quoting City of Canon v. Harris, 489 U.S. 378, 390–91 (1989)). Instead, Huntimer must establish "that in light of the duties assigned to specific officers . . . the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [prison] can reasonably be said to have been deliberately indifferent to the need." Id. at 998 (alteration in original) (quoting City of Canton, 489 U.S. at 390).

Because Huntimer failed to show Seydel was on notice of any unconstitutional conduct or produce any evidence establishing that he acted with deliberate indifference, Seydel is entitled to dismissal of Huntimer's failure to train claims. See Andrews v. Fowler, 98 F.3d 1069, 1074–78 (8th Cir. 1996) (applying the same standard for individual and official capacity failure to train

27

claims).  Huntimer has also not shown "that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity."  Moyle, 571 F.3d at 817 (cleaned up).  Thus, Seydel is entitled to summary judgment on Huntimer's claims against him in his official capacity.

     **v.**    **State-Law Assault and Battery**

     Given this Court's above rulings, Huntimer's only remaining claims—assault and battery—against Herrmann and Rohwer are based in state, not federal, law, and there is no complete diversity of citizenship here.  To hear these claims, this Court would have to exercise supplemental jurisdiction under 28 U.S.C. § 1367(a), which permits a district court to adjudicate state-law claims that are a part of the same case or controversy as the claims that fall within the district court's original jurisdiction.  However, a federal court generally, under § 1367(c)(3), declines to exercise supplemental jurisdiction if the district court "has dismissed all claims over which it has original jurisdiction," unless the case is close to or in the midst of trial or other such reasons support retaining jurisdiction.  Zutz v. Nelson, 601 F.3d 842, 850 (8th Cir. 2010) (cleaned up).  A "district court is afforded broad discretion in determining whether to exercise supplemental jurisdiction."  Crest Constr. II, Inc. v. Doe, 660 F.3d 346, 359 (8th Cir. 2011) (cleaned up).  "In determining whether to exercise supplemental jurisdiction, courts consider judicial efficiency, convenience, and fairness to litigators."  Magee v. Trs. of the Hamline Univ., 957 F. Supp. 2d 1047, 1060 (D. Minn. 2013) (citing Condor Corp. v. City of St. Paul, 912 F.2d 215, 221 (8th Cir. 1990)).  "In assessing efficiency, convenience, and fairness, courts look to a number of factors, including the stage of the litigation; the difficulty of the state claim; the amount of time and energy necessary for the claim's resolution; and the availability of a state forum."  Id. (cleaned up).  "Federal courts should exercise judicial restraint and avoid state law

issues wherever possible." Thomas v. Dickel, 213 F.3d 1023, 1026 (8th Cir. 2000) (cleaned up). The stage of this case is "before any substantial preparation has gone into the dependent claims," which provides a "fair" reason to decline to exercise supplemental jurisdiction. Gregoire, 236 F.3d at 419 (quoting 28 U.S.C.A. § 1367 cmt. at 835 (1993)).

This Court declines to exercise supplemental jurisdiction over Huntimer's state-law claims because he has not stated a viable claim within this Court's original jurisdiction. See Mountain Home Flight Serv., Inc. v. Baxter Cnty., 758 F.3d 1038, 1045 (8th Cir. 2014) (holding that "the district court acted within its discretion declining to exercise supplemental jurisdiction" after dismissing § 1983 claims). Huntimer's assault and battery claims against Herrmann and Rohwer are dismissed without prejudice. Accordingly, Defendants' Motion for Summary Judgment on these issues is denied as moot.

### C. Motion to Revive Official Capacity Claims

On March 12, 2025, Huntimer moved to resurrect official capacity claims, seeking injunctive relief, that this Court dismissed as moot in this its prior Opinion and Order on Defendants' Motion to Dismiss. Doc. 77. Huntimer claims he is back in DOC custody at the SDSP. Id. Huntimer asserts the claims are no longer moot and should be revived. Id. Even if that were true, Defendants are entitled to summary judgment on these claims because, as decided above, Defendants did not violate Huntimer's Eighth Amendment rights. When there is "no Constitutional violation . . . the use of an injunction is unnecessary since the conduct sought to be enjoined no longer represents a claim which violates the Eighth Amendment." Falls v. Nesbitt, 966 F.2d 375, 380 (8th Cir. 1992). Because Huntimer did not establish a constitutional violation above, Huntimer's motion to revive his official capacity claims is denied.

IV.    **Order**

For the above reasons, and the record as it now exists before this Court, it is hereby

ORDERED that Defendants' Motion for Summary Judgment, Doc. 46, is granted in part and denied in part. The motion is granted in favor of Defendants on all § 1983 claims. The motion is denied as moot to the extent Defendants sought summary judgment on Huntimer's state-law assault and battery claims because this Court declines to exercise supplemental jurisdiction over those claims. It is further

ORDERED that Huntimer's § 1983 claims are dismissed with prejudice. It is further

ORDERED that Huntimer's state-law assault and battery claims are dismissed without prejudice. It is finally

ORDERED that Huntimer's motion to revive his official capacity claims that were previously dismissed as moot, Doc. 77, is denied.

DATED this 17th day of March, 2025.

BY THE COURT:

ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE

30